1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

AT TACOMA

10

ROBERT LEE PETERS,

11
                    Plaintiff,                     CASE NO. 15-cv-05198 JRC

12
            v.                                     ORDER ON DEFENDANT'S
                                                   MOTION TO ALTER OR AMEND
13                                                 JUDGMENT

14   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security
15   Administration,

16                  Defendant.

17

18          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

19   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

20   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

21   Magistrate Judge, Dkt. 7). This matter is before the Court on defendant's motion to alter

22   or amend judgment and has been fully briefed (*see* Dkts. 22, 23, 24).

23

24

1    After considering and reviewing the record, the Court concludes that this Court's

2   original opinion and judgment did not rest on any manifest error of law or fact. Defendant

3   contends that the "crux of the Acting Commissioner of Social Security's (Commissioner)

4   motion to alter or amend the judgment was that the Court erred by crediting opinions that

5   reflected plaintiff's functioning during a period of drug and alcohol abuse" (Dkt. 24

6   (*citing* Dkt. 24, pp. 5-8)). However, as discussed herein, the ALJ cited no evidence

7   supporting any finding that plaintiff was using drugs or alcohol during the timeframe of

8   one of those opinions. Therefore, even if the ALJ clearly had articulated this rationale for

9   failing to credit this opinion, which he did not, such reasoning still would not be based on

10   substantial evidence in the record as a whole. Although defendant contends that the

11   doctors had an "incorrect belief that plaintiff was in a period of sobriety," defendant also

12   fails to cite any page in the record demonstrating that plaintiff was not in a period of

13   sobriety for the year and a half leading up to the examination and opinion of Dr. Koenen

14   and through the opinion of Dr. Lewis.

15    Defendant's attempt to explain what the ALJ meant by "excessive limits"

16   demonstrates that the reasoning was not clear from the decision and that the Court would

17   be required to guess what the ALJ meant. Furthermore, even if the Court were to accept

18   defendant's explanation of the ALJ's reasoning, such reasoning still would not be based

19   on substantial evidence in the record as a whole.

20    Defendant's assertion that the Court disregarded whether or not the identified

21   limitations were caused by drug abuse and alcoholism reflects a misunderstanding of the

22   Court's decision. As noted by the Court, the ALJ acknowledged the presence of some of

the assessed limitations even if plaintiff stopped the substance use (*see* Dkt. 20, p. 7 (*citing* AR. 15)), but failed to incorporate the assessed limitations into the ALJ's residual functional capacity ("RFC"), which was based on what limitations would result if plaintiff "stopped the substance use" (AR. 16). Therefore, it is clear from the Court's opinion that the Court was analyzing the ALJ's findings regarding limitations that would persist in the absence of substance use and was not disregarding the issue of whether or not these limitations were caused by the substance use.

In addition, defendant has not cited any law in support of the argument that an ALJ may ignore significant probative evidence regarding the issue of materiality simply because such issue is reserved to the Commissioner.

Finally, the Court properly applied the harmless error standard and defendant has cited no law demonstrating otherwise.

Therefore, defendant's motion is denied.

<u>BACKGROUND</u>

Plaintiff, ROBERT LEE PETERS, was born in 1962 and was 48 years old on the application date of October 25, 2010 (*see* AR. 255-61). According to the ALJ, plaintiff has at least the severe impairments of "personality disorder, posttraumatic stress disorder (PTSD), somatoform disorder, and polysubstance addiction (20 CFR 416.920(c))" (AR. 13).

<u>PROCEDURAL HISTORY</u>

The Court incorporates the procedural history from its previous Order (Dkt 20). On October 23, 2015, this Court concluded that the ALJ erred in evaluating the medical

ORDER ON DEFENDANT'S MOTION TO ALTER
OR AMEND JUDGMENT - 3

evidence; concluded that the ALJ erred by failing to include in the RFC relevant

limitations; and concluded that the error was not harmless because although the ALJ

found that the RFC limitation to simple, routine and repetitive tasks addresses the

concentration and persistence limitations of plaintiff, this finding is not supported by

substantial evidence in the record as a whole and constitutes legal error as it is contrary to

Ninth Circuit law (*id*.).The Court noted that just because the tasks are simple does not

mean that an individual does not need to persist in doing them in order to be able to

perform the work (*id.*).

On November 20, 2015, defendant filed a motion to alter or amend the judgment

pursuant to Federal Rule of Civil Procedure 59(e) (Dkt. 22). Plaintiff contends that the

Court's reasoning should be affirmed as written (Dkt. 23, p. 9).

<u>STANDARD OF REVIEW</u>

According to the Ninth Circuit:

> Under Federal Rule of Civil Procedure 59(e), a party may move to have
> the court amend its judgment within 28 days after entry of judgment.
> "Since specific grounds for a motion to amend or alter are not listed in
> the rule, the District Court enjoys considerable discretion in granting or
> denying the motion." *McDonnell v. Calderon*, 197 F.3d 1253, 1255 n.1
> (9th Cir. 1999) (en banc) (per curiam) (internal quotation marks
> omitted). But amending a judgment after its entry remains "an
> extraordinary remedy which should be used sparingly." *Id.* (internal
> quotation marks omitted). In general, there are four basic grounds upon
> which a Rule 59(e) motion may be granted: (1) if such motion is
> necessary to correct manifest errors of law or fact upon which the
> judgment rests; (2) if such motion is necessary to present newly
> discovered a previously unavailable evidence; (3) if such motion is
> necessary to prevent manifest injustice; or (4) if the amendment is
> justified by an intervening change in controlling law. *Id.*

*Allstate Insurance Co v. Herron,* 634 F.3d 1101, 1111 (9th Cir. 2011) (*citing McDonnell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (*citing* 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995))). Defendant contends that this Court's judgment rests on manifest errors of law and fact (Dkt. 22, p. 2).

<u>DISCUSSION</u>

First, the Court notes that in this matter, the initial findings by the ALJ included the finding that with plaintiff's drug abuse and alcoholism ("DAA"), plaintiff's limitations were so severe that his impairments met listed impairments and that a residual functional capacity ("RFC") determination did not even need to be made in order to find that with plaintiff's DAA, plaintiff is disabled  (AR. 13 ("The claimant's impairments, including the substance use disorders, meet sections 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1" (*citing* 20 C.F.R. 416.920(d)))). Next, the ALJ concluded that if plaintiff stopped his substance use, plaintiff no longer would be disabled. Thus, the ALJ's ultimate determination regarding non-disability is premised entirely on the ALJ's findings regarding what limitations plaintiff would have if he stopped his substance use. Therefore, the ALJ's findings regarding what limitations plaintiff would have if he stopped his substance use must be based on substantial evidence in the record as a whole and these findings cannot be made adequately by ignoring significant probative evidence to the contrary. *See* 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)); *see also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739

F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).

The Court also notes the statement in one of defendant's cited references in support of this motion that the Social Security Administration does "not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." SSR 13-2p, 2013 SSR LEXIS 2 at 26. This fact further supports the conclusion that an ALJ needs to evaluate properly how a claimant's impairments and limitations would improve if the claimant were to stop using drugs or alcohol. *See id.*

**(1) Did the Court commit a manifest error of law when it determined that the ALJ's reasoning as put forth by defendant was *post hoc* rationalization?**

Defendant contends that the Court committed manifest error of law when it concluded that the ALJ did not specify what "excessive limits" he was referring to when he indicated that "excessive limits were provided for the continued sporadic use of drugs and alcohol" (AR. 27). Defendant contends that her explanation in her responsive brief for the meaning of this statement was not *post hoc* rationalization (Dkt. 22, pp. 2-5). Plaintiff contends that defendant "engages in a tortured argument in an effort to attempt to discern the reasoning of the ALJ but the argument is based upon a false assumption, that being that Dr. Lewis only assessed four moderate limitations  .  .  .  . [when] there were actually eight moderate limitations  .  .  .  ." (Dkt. 23, p. 2).

First, the Court notes that defendant admits that "the ALJ did not expressly state which of the four moderate limitations that Dr. Lewis assessed were 'excessive limits' . . . ." (Dkt. 22, p. 4). Furthermore, defendant admits that the ALJ may have "considered all four 'excessive,' just three the ALJ describe in his decision, or the two that the ALJ described in sentence 2 . . . ." (*id.* at 5). These assertions support the Court's conclusion that the ALJ's rationale was not clear from the ALJ's written decision.

Defendant quotes the ALJ's written decision as follows to support her argument:

> [Sentence one] It was determined that the claimant was capable of understanding and remembering short and simple instructions. [Sentence two] However, Dr. Lewis also found anxiety symptoms would make maintaining attention and regular attendance moderately difficult and responding to changes and stress [more difficult]. [Sentence 3] This opinion is given significant weight even though it is not entirely consistent with the mental status examination or the claimant's report of daily activities at the consultative examination, which was the basis for this assessment, because the excessive limits were provided for the continued sporadic use of drugs and alcohol.

(Dkt. 22, p. 3 (*quoting* AR. 26-27)).

Defendant repeats her argument from her Response Brief that the "excessive limits" in sentence three referred to the limits described in sentence two (Dkt. 22, p. 3). However, the Court concluded that the ALJ did not specify clearly what the "excessive limits" were.

First, sentence two is the only one in which the ALJ mentions limitations opined by Dr. Lewis, however some of those difficulties are indicated as "moderately difficult" while another one is opined to be even "more difficult," although this fact is not clear from defendant's attempt to quote the ALJ's written decision, as in defendant's brief,

defendant omitted the words "more difficult" (*see id.; see also* AR. 26-27). The fact that the ALJ referenced the opinion by Dr. Lewis that some difficulties were "moderately difficult," while others were "more difficult," reasonably could support the inference that the ALJ only was rejecting the "more difficult" limitation as the "excessive limits" (*see* AR. 26-27). Or, it could support the inference that the ALJ had "referred to the limits described in sentence 2," as argued by defendant, and that the ALJ was rejecting all of these specified limitations on this basis (*see id.; see also* Dkt. 22, p. 3). Defendant appears to concede this ambiguity by arguing that "it is reasonable to infer that the ALJ described as 'excessive,' one or more of the three limits that the ALJ discussed in his decision, rather than the limit not mentioned" (Dkt. 22, p. 4). The fact that the ALJ could have been describing one of the limits as excessive, or could have been describing more than one of the limits as excessive demonstrates that it is not clear which limitations the ALJ was referring to as "excessive."

Although defendant also contends that it is clear what the ALJ meant because the ALJ referred to limits in the plural as opposed in the singular, this argument is without merit as sentence two contains three limits, maintaining attention; maintaining regular attendance; and responding to changes and stress, with one of those limits, *i.e.*, responding to changes and stress, being one in which Dr. Lewis opined that plaintiff suffered greater limitations. Crediting the plural versus singular argument would suggest that the ALJ found as "excessive," the maintaining of attention and of regular attendance, at which Dr. Lewis opined that plaintiff suffered from moderate difficulty as opposed to that the ALJ found as "excessive," the responding to changes and stress, at which Dr.

1    Lewis opined that plaintiff suffered even more difficulty. This is completely non-intuitive

2    and would not make sense. The only other inference that could be made with respect to

3    plural versus singular, would be that the ALJ was discrediting all of the limitations (as

4    sentence one describes what plaintiff was capable of and does not entail a limitation), in

5    which case the word "excessive" would be irrelevant and illogical: if the ALJ was failing

6    to credit all of the discussed limitations, it would make no sense to use the adjective

7    "excessive" to delineate which limits were being rejected when they all were being

8    rejected.

9         Furthermore, defendant admits that Dr. Lewis opined that plaintiff suffered from

10   more moderate limitations then discussed by the ALJ, although defendant contends that

11   there were "only four such moderate limitations," when there actually were eight, as

12   discussed further below, *see infra*, section 2 (*see id*.; *see also* AR. 122-23). Therefore, not

13   only did the ALJ fail to discuss significant probative evidence, but also, the "excessive"

14   limits that the ALJ refers to generally also could reference any of these other opined five

15   moderate limitations (*see* AR. 122-23). The Court concludes that there was no manifest

16   error of law or fact committed when the Court concluded that the ALJ failed to specify

17   what the "excessive" limits were and that defendant's explanation of the ALJ's decision

18   is a *post hoc* rationalization.

19        Additionally, the Court notes that if defendant's explanation is correct, then the

20   ALJ was rejecting part of the January 15, 2011 opinion of Dr. Lewis, which was based on

21   a review of the January 6, 2011 opinion of Dr. Mark A. Koenen, M.D., for the reason that

22   the opinion of Dr. Lewis included limitations that existed because of plaintiff's use of

drugs and alcohol (*see* AR. 26-27). This rationale would not make any sense, as the ALJ made his determination with respect to the RFC regarding what limitations plaintiff would have if he stopped the substance abuse based largely on the opinion of Dr. Koenen, with the implication that plaintiff was not using substances during the period of time relevant to the examination of Dr. Koenen on January 6, 2011, just nine days prior to the evaluation by Dr. Lewis (AR. 27). The ALJ gave the opinion of Dr. Koenen significant weight and noted that "Dr. Koenen believed the claimant appeared to be functioning relatively well and the claimant endorsed being drug-free  .  .  .  .  According to Dr. Koenen, the prognosis was dependent on the claimant's ability to continue to abstain from drugs  .  .  .  ." (*id.*). The Court also notes that previously in his written decision, the ALJ noted that at the time of the evaluation of Dr. Koenen, "the claimant was on probation with regular drug screens and appeared to be functioning relatively well" (AR. 15 (*citing* AR. 460)). Yet, defendant argues that the ALJ clearly was putting forth the rationale that he was rejecting some of the opinions by Dr. Lewis provided 9 days later because they were based on plaintiff's substance use, when the ALJ cites absolutely no evidence of any substance use by plaintiff between January 6 and January 15 (nor does the ALJ site any evidence of substance use for the year and a half prior to these evaluations, as discussed further below, *see infra*, section 2). In addition, Dr. Lewis relied on and gave great weight to the opinion of Dr. Koenen when providing her opinion (AR. 118, 121). It would not be rational and would be totally inconsistent for the ALJ to rely on the January 6, 2011 opinion of Dr. Koenen in order to determine what limitations would exist in the absence of substance abuse, and then reject part of the January 15,

2011 opinion of Dr. Lewis that was based on the opinion of Dr. Koenen because plaintiff was using substances at that time, unless there was some evidence of substance use between January 6 and January 15. The ALJ cited no such evidence.

Finally, even if the Court were to accept defendant's explanation for the meaning of this rationale provided by the ALJ and conclude that this rationale was reasonably within the ALJ's written decision, which it does not, the ALJ's rationale still is not based on substantial evidence in the record as a whole, as discussed further below in this Order, *see infra*, section 2. There was no manifest error of law or fact.

**(2) Did the Court apply the wrong law when it held that the ALJ erred by failing to include opined limitations from the state agency consultants in the RFC regarding what limitations would persist if plaintiff stopped the substance use?**

Defendant contends that the "Court held that the ALJ erred by failing to include in the RFC all the restrictions identified by Drs. Lewis and Brown, without regard to whether those limitations were caused by DAA" (Dkt. 22, p.7 (*citing* Dkt. 20, pp. 6-10)). Plaintiff contends that the "decision of this Court reflects limitations found significant by the ALJ after he did his DAA analysis and defendant's argument to the contrary is unavailing (Dkt. 23, p. 3). Defendant also asserts that "[substantial] evidence in the record as a whole supports the conclusion that plaintiff would not be disabled if he stopped using drugs and alcohol" (Dkt. 24, p. 6). However, defendant fails to acknowledge that the ALJ's conclusion that plaintiff would not be disabled if he stopped using drugs and alcohol was premised on an RFC containing findings of what limitations would persist if plaintiff stopped using substances, and that the Court concluded that the

ALJ erred by failing to include relevant limitations that would persist in the absence of substance use in this RFC and hence, that the RFC was not based on substantial evidence in the record as a whole.

Defendant's assertion that the Court disregarded whether or not the identified limitations were caused by drug abuse and alcoholism reflects a misunderstanding of the Court's decision. As noted by the Court, the ALJ acknowledged the presence of some of the assessed limitations even if plaintiff stopped the substance use, as he found that regarding "concentration, persistence, or pace, the claimant would have moderate difficulties if the substance use was stopped" (*see* Dkt. 20, p. 7 (*citing* AR. 15)). However, the ALJ failed to incorporate the assessed limitations into the ALJ's RFC, which was based on what limitations would result if plaintiff "stopped the substance use" (AR. 16). Therefore, it is clear from the Court's opinion that the Court was analyzing the ALJ's findings regarding limitations that would persist in the absence of substance use and was not disregarding the issue of whether or not these limitations were caused by the substance use. Contrary to defendant's argument, the Court was not "improperly requiring the ALJ to include, in the RFC, limitations caused by drug and alcohol abuse," but instead the Court concluded that the ALJ's finding that the limitations assessed by the state agency consultants were the result of use of drugs and alcohol, contrary to the opinion of the state agency consultants, is a finding not based on substantial evidence in the record as a whole (*see* Dkt. 20, pp. 4-10).

For example, to elucidate further, Dr. Jan Lewis, Ph.D. provided her opinion regarding plaintiff's limitations on January 15, 2011 (AR. 116-26). In formulating her

opinion, she indicated that she reviewed the objective evidence and the opinion of Dr.

Mark A. Koenen, M.D. and gave it great weight (AR. 118, 121). Dr. Lewis opined that

the evidence revealed the diagnosis for plaintiff of anxiety disorder and that this

impairment resulted in moderate limitations with respect to concentration, persistence or

pace, among other moderate limitations (AR. 120). She indicated that plaintiff's

allegations of limitations were substantiated by the objective medical evidence alone

(AR. 121).

Dr. Lewis specified various functional limitations of plaintiff with respect to

concentration, persistence, or pace (AR. 122). She indicated that plaintiff suffered from

moderate limitation in his ability to understand and remember detailed instructions;

moderate limitation in his ability to carry out detailed instructions; moderate limitation in

the ability to maintain attention and concentration for extended periods; moderate

limitation in the ability to perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances; moderate limitations in the

ability to sustain an ordinary routine without special supervision; and moderate

limitations in the ability to complete a normal workday or workweek without

interruptions from psychologically-based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods (*see id.*). Dr. Lewis further

explained in narrative form her opinions regarding the sustained concentration and

persistence limitations, opining that plaintiff's "anxiety [symptoms] will make

maintaining attention, regular attendance and normal [work] week moderately difficult"

(*id.*). She also opined that plaintiff suffered from moderate limitations in his ability to

maintain socially appropriate behavior and to adhere to basic standards of neatness and

cleanliness (AR. 123). She specified in narrative form that this limitation was based on

the fact that during plaintiff's consultation examination, he "appeared unkempt and was

malodorous" (*see id*.). With respect to adaptation limitations, Dr. Lewis opined that

plaintiff suffered from moderate limitation in his ability to respond appropriately to

changes in the work setting (*see id*.). She specified in narrative form that this particular

limitation was due to her opinion that plaintiff's "anxiety symptoms and antisocial

tendencies will make responding to changes and stress more difficult" (*see id*.). Finally,

and most importantly, Dr. Lewis opined that "DAA is involved, but is NOT material"

(AR. 125) (emphasis in original).

The ALJ gave significant weight to this opinion (AR. 26-27). The ALJ noted the

opinions from Dr. Lewis that "anxiety symptoms would make maintaining attention and

regular attendance moderately difficult and responding to changes and stress more

difficult," however the ALJ failed to even mention, much less discount, the other five

specific opinions regarding moderate limitations that the Court described above (AR. 26).

This is an additional error as these specified limitations are significant probative evidence

that the ALJ should not have rejected without discussion. *Flores v. Shalala*, 49 F.3d 562,

570-71 (9th Cir. 1995) (the Commissioner "may not reject 'significant probative

evidence' without explanation") (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th

Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).

As discussed by the Court in the original Order, the ALJ provided the opinion of

Dr. Lewis significant weight even though he found that her opinion "is not entirely

consistent with the mental status examination or the claimant's report of daily activities at the consultative examination, which was the basis for this assessment, because the excessive limits were provided for the continued sporadic use of drugs and alcohol" (AR. 26-27). However, as the Court noted in the original Order, the ALJ failed to specify what "the excessive limits" were (*see id.*). As discussed above, *see supra*, section 1, the Court does not agree that it is clear what the ALJ meant by "excessive limits." Furthermore, even if the Court were to accept defendant's explanation for the meaning of this rationale provided by the ALJ, such rationale still is not based on substantial evidence in the record as a whole. Defendant contends that the ALJ "appropriately factored out [opined] limitations," because these limitations were the result of plaintiff's use of drugs and alcohol, noting the ALJ's assertion that records "from Harborview indicated that the claimant might have relapsed around this time" (Dkt. 22, p. 8 (*citing* AR. 27)). However, even if the Court were to accept defendant's argument that the ALJ sufficiently articulated his rationale, the ALJ's justification for rejecting such limitations based on the finding that plaintiff "might have relapsed around this time" is not supported by substantial evidence in the record as a whole. Although the ALJ does not specify which portion of the 1380 page record that he is relying on, the Court can make a reasonable inference that the ALJ is relying on the "records from Harborview" discussed previously in the ALJ's written decision regarding plaintiff's rehab from heroin relapse in 2011 (*see* AR. 19 (*citing* AR. 894, 946)). However, even giving the ALJ this inference regarding what record the ALJ is relying on, in addition to the inference regarding this rationale, the record does not support the ALJ's assertion.

1    The Harborview record cited by the ALJ indicates that plaintiff "resumed heroin

2  eight months" prior to October 5, 2011 (*see* AR. 894). This quoted record demonstrates

3  only that plaintiff started using heroin again on approximately February 5, 2011, before

4  quitting again on March 3, 2011 (*see id.*; *see also* AR. 1123). As Dr. Lewis provided her

5  opinion on January 15, 2011, the ALJ's finding that any "excessive limits" opined by Dr.

6  Lewis were based on plaintiff's drug use at this time is not supported by substantial

7  evidence in the record as a whole (AR. 116). Similarly, the record relied on by Dr. Lewis

8  included mainly the evaluation and opinion of Dr. Mark A. Koenen, M.D., who examined

9  and assessed plaintiff on January 6, 2011 (AR. 157-61). The record from Dr. Koenen

10  demonstrates that at the time of his evaluation, on January 6, 2011, plaintiff was "on

11  probation with regular urine drug screens" (AR. 460). The ALJ has not provided

12  substantial evidence in the record to demonstrate that plaintiff was using substances

13  either shortly before or during the assessment by Dr. Lewis, nor shortly before or during

14  the examination and assessment by Dr. Koenen. Therefore, even if the Court were to

15  accept defendant's argument that the ALJ's rationale was clear and was not *post hoc*

16  analysis, which the Court does not do, the ALJ's findings that these assessments were

17  based on "what plaintiff's functional limitations were when he was using drugs" (Dkt. 22,

18  p. 6), as contended by defendant, still is not a finding supported by substantial evidence

19  in the record as a whole. As noted by the ALJ, plaintiff was incarcerated from July 2009

20  until September 2010, and ALJ does not cite any evidence to suggest that plaintiff was

21  using substances while incarcerated or from the period of time between his release and

22  February, 2011, during which he was on supervised probation (AR. 17, 22). In fact, the

record suggests that plaintiff was substance free from July 2009 until his appointment

with Dr. Koenen on January 6, 2011 and through the assessment of Dr. Lewis on January

16, 2011, and the ALJ has not cited any evidence to the contrary. Therefore, the Court

was not "improperly requiring the ALJ to include, in the RFC, limitations caused by drug

and alcohol abuse," as argued by defendant, because there is no evidence in the record

that plaintiff was using substances during the time frame leading up to the evaluations by

Drs. Koenen and Lewis, or for a year and a half prior to these evaluations (Dkt. 22, p. 8).

For the reasons stated and based on the record as a whole, the Court concludes that

the Court did not ignore "the fact that the ALJ was applying a legal and regulatory

framework governing DAA cases" and did not commit manifest error by concluding that

"the ALJ erred by failing to include in the RFC all the restrictions identified by Drs.

Lewis and Brown, without regard to whether those limitations were caused by DAA"

(Dkt. 22, p. 7).

Furthermore, defendant has not demonstrated that the Court committed manifest

error by finding persuasive unpublished Ninth Circuit dispositions. To the contrary, the

Ninth Circuit caselaw at issue persuasively explains, with citation to well-established

law, that "the [] contention that the phrase 'simple, repetitive work' encompasses

difficulties with concentration, persistence, or pace is not persuasive." *Brink v. Comm'r

of Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th Cir. 2009) (unpublished opinion)

(memorandum opinion) (relying on *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995)

and *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008)); *Lubin v. Comm'r of Soc.

Sec. Admin.*, 507 Fed. App'x 709, 712 (9th Cir. 2013) (relying on 20 C.F.R. §§ 404.1545,

416.945 and *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)) (*see also* Dkt. 23, pp. 6-7). The Court found these relevant cases persuasive when analyzing a different issue than DAA: that is, when analyzing the finding by the ALJ that the limitation to "simple, routine, repetitive tasks as defined by reasoning level 2, [] addresses the concentration and persistence limits as well as the changes in routine and stress issues identified by Dr. Lewis and Dr. Brown" (AR. 27). The case law with respect to whether or not a limitation to simple, routine and repetitive tasks in an RFC can appropriately address concentration limitations, persistence limitations and limitations regarding changes in routine and dealing with stress is not made irrelevant by the fact that the decision is made within the context of a DAA case. Defendant's argument to the contrary, with the assertion that the Court applied the wrong law, is not persuasive (Dkt. 22, pp. 7-8). Because the Court concluded that *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) presented "the contrary factual presentation," the Court did not err by finding persuasive unpublished opinions that are directly on point (*see* Dkt. 20, p. 8).

### 3.     Whether or not the fact that materiality is a determination reserved to the Commissioner demonstrates that this Court committed manifest error.

Defendant contends that the Court committed manifest error by noting that the state agency psychological consultants did not believe that substance use was a contributing factor material to plaintiff's functional ability, even though the ALJ gave significant weight to the opinions of these consultants, but made the opposite conclusion regarding materiality (Dkt. 22, p. 8 (*citing* Dkt. 20, p. 12)). Defendant notes that the issue

of materiality is reserved to the Commissioner (*id.* (*citing* 20 C.F.R. § 416.927(e); SSR 13-2p at *8)). Although this was not the issue underlying the Court's reversal of this matter, the Court will address defendant's argument briefly.

Simply because an issue is reserved to the Commissioner does not mean that an ALJ can ignore significant probative opinion evidence contrary to the findings in the decision without explanation. As noted by the Ninth Circuit, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. Here, the ALJ completely disregarded without mention the opinions of the state agency psychological consultants regarding materiality yet gave their opinions significant weight. Therefore, the Court concludes that the Court did not err by noting these facts. Neither of the references cited by defendant establishes that because the issue of materiality is reserved to the Commissioner that the ALJ therefore can ignore evidence to the contrary of the ALJ's finding regarding materiality. The Court notes an analogous issue: The ultimate issue of disability also is reserved to the Commissioner, yet significant probative evidence to the contrary of a finding of non-disability cannot be ignored without explanation. *See Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)) (Although "'the administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, [] he cannot reject them without presenting clear and convincing reasons for doing so'") (*quoting Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (other citations omitted)); *see also Flores, supra*, 49 F.3d at 571.  In addition, the Social Security Rule cited by defendant in support of this argument itself indicates that "[all] adjudicators must provide sufficient information in their determination or decision that explains the rationale supporting their determination of the materiality of DAA so that a subsequent reviewer considering all the evidence in the case record is able to understand the basis for the materiality finding in the determination of whether the claimant is disabled." 2013 SSR LEXIS 2, SSR 13-2p at *4.

For the reasons stated, the Court does not find persuasive defendant's argument that pursuant to "the regulations, the ALJ did not need to provide reasons to discount an opinion about materiality because it is an opinion on an issue reserved to the Commissioner, which is not given any special significance" (Dkt. 22, p. 8). In the circumstances of this case, the opinion of materiality provided by the state agency consultants was significant and probative evidence that the ALJ erred in failing to discuss. *See Flores, supra*, 49 F.3d at 571.

4. **Was the harmless error determination by this Court based on manifest error?**

Defendant takes issue with how the Court conducted its harmless error analysis. First, defendant cites no law in support of the argument that a harmless error analysis necessarily requires an explicit determination of whether or not there is harmless error in the RFC as opposed to a determination of whether or not there is harmless error in the

1    hypothetical presented to the vocational expert (*see* Dkt. 22, p. 9). However, even if there

2    existed such a requirement, defendant's argument still is unpersuasive.

3        Defendant's argument that the Court erred because it did not consider first

4    "whether the RFC finding is supported by substantial evidence" before considering if the

5    questions posed to the vocational expert ("VE") failed to include all relevant limitations

6    is without merit (Dkt. 22, p. 9). In the Court's discussion, the Court included the

7    following:

8
9            Given the specific circumstances of this case, the Court finds persuasive
            plaintiff's argument that just "because a person is limited to simple tasks
10           does not mean that there is no need for concentration or persistence"
            (Dkt. 12, p. 6). Similarly, just because claimant is limited to simple,
11           routine and repetitive tasks does not mean that he does not need to
            maintain regular attendance at work. Therefore, the Court concludes that
12           the ALJ erred by failing to include in the RFC and in the hypothetical to
            the VE the moderate limitations assessed by Drs. Lewis and Brown with
13           respect to concentration, persistence, and pace; and with respect to
            maintaining regular attendance. The ALJ's finding that the RFC
14           limitation to simple, routine, repetitive tasks adequately "addresses the
            concentration and persistence limits," and any unstated inference that it
15           accommodates the limitations on maintaining regular attendance or
            completing a full workday/workweek are not findings supported by
16           substantial evidence in the record as a whole and are contrary to Ninth
            Circuit case law. The Court also concludes that this error is not harmless.
17
18   (Dkt. 20, p. 10).

19       As can be seen from this quote from the Court's Order, the Court explicitly

20   concluded that "the ALJ erred by failing to include in the RFC  . . . .  the moderate

21   limitations assessed by Drs. Lewis and Brown with respect to concentration, persistence,

22   and pace; and with respect to maintaining regular attendance . . . . [and] that this error

23   is not harmless " (*id.*). The Court did not simply find that there was an error in the ALJ's

24

1  review of the medical evidence without analyzing whether or not the error impacted the

2  RFC, as argued by defendant. It is clear that the Court concluded that the RFC is missing

3  relevant limitations, and therefore is not supported by substantial evidence (*see id*.).

4      The Court then went on to explain how if the relevant limitations had been

5  included into the RFC and thus into the hypothetical presented to the VE, the ultimate

6  disability determination may have been different. As noted by the Ninth Circuit in the

7  only law cited by defendant in support of the contention regarding how the Court should

8  have conducted its harmless error analysis, an error only "is harmless if it is

9  'inconsequential to the ultimate nondisability determination  .  .  .  .'" *Treichler v.*

10  *Comm'r Soc. Sec. Admin*., 773 F.3d 1090, 1099 (9th Cir. 2014) (citation omitted). As the

11  Court clearly analyzed whether or not the error was inconsequential to the ultimate

12  disability determination, the Court did not commit a manifest error of law.

13  

14      Defendant appears to argue that if the RFC can be supported by one doctor's

15  opinion, than any harmful errors in the ALJ's analysis of other medical opinions are not

16  relevant to the overall harmless error analysis. Defendant's argument fails to

17  acknowledge that recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ

18  errors in social security are harmless if they are 'inconsequential to the ultimate

19  nondisability determination' and that 'a reviewing court cannot consider [an] error

20  harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

21  the testimony, could have reached a different disability determination." *Marsh v. Colvin*,

22  792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout v. Commissioner*, *Social*

23  *Security Administration*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). Applying this

24

standard, even if the RFC is supported by the opinion of one doctor, if an ALJ commits legal error during the evaluation of other medical evidence, and when crediting that other medical evidence the RFC would be different and could lead to a different disability determination, the error is not harmless error. *See id.* Defendant's argument that an ALJ can commit harmful error during the evaluation of multiple medical opinions, but if the RFC is supported by one medical opinion, then the written decision should be affirmed, is not persuasive and is contrary to Ninth Circuit case law. *See id.* Defendant suggests that it does not matter if fully crediting the improperly discredited evidence would lead to a different disability finding as long as the RFC is supported by a medical opinion, and simply has put forth an alternative harmless error standard contrary to Ninth Circuit law.

Also, in addition to the capacity to reverse a decision by the ALJ that is not supported by substantial evidence in the record as a whole, this Court also may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Finally, the Court concludes that defendant's argument that the Court elevated the opinions of non-examining doctors over the opinion of an examining doctor has no merit (Dkt. 22, p. 12). Contrary to the argument of defendant, the Court did not assign weight to any particular opinion over any other particular opinion. Instead, the Court concluded that the ALJ committed harmful error when analyzing the medical opinion evidence of the non-examining doctors, whose opinions were given significant weight, the same weight given by the ALJ to the opinion of Dr. Koenen, an examining doctor.

1

## CONCLUSION

2       Based on the stated reasons and the relevant record, the Court denies defendant's

3  motion to alter or amend the judgment.

4       Dated this day 11th of December, 2015.

5

6

J. Richard Creatura
7                                                United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24